Immanuel J. Herrmann
Daniel A. Frishberg
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Immanuel J. Herrmann and Daniel A. Frishberg, Celsius

Network LLC, *et al.* creditors, hereby appeal to the United States District Court for the Southern

District of New York, pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure

8001-8005, from the United States Bankruptcy Court for the Southern District of New York's

June 20, 2023 *Order Denying Immanuel Herrmann and Daniel Frishberg's Motion to Vacate the*

*Customers Claims Opinion and Order* [Dkt. No. 2819]. A copy of the Order appealed from is

attached hereto as **Exhibit A,** the Motion that led to the order is attached as **Exhibit B,** and the

contemporaneously filed declarations are attached as **Exhibits C and D**. This appeal is related to

*In re Celsius Network LLC*, Case No. 23-CV-02882-JLR (S.D.N.Y. District Court).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

The names of all the parties to the Order appealed from and the names, addresses, and telephone numbers of their respective counsel are as follows:

Appellants:

> ***PRO SE* CUSTOMER-APPELLANTS**
> Immanuel J. Herrmann
> Daniel A. Frishberg

Appellees:

> **MILBANK LLP**
> Dennis F. Dunne
> Nelly Almeida
> 55 Hudson Yards
> New York, NY 10001
> Telephone: (212) 530-5000
>
> **MILBANK LLP**
> Andrew M. Leblanc
> Melanie Westover Yanez
> 1850 K Street, NW, Suite 1100
> Washington, DC 20006
> Telephone: (202) 835-7500
>
> *Counsel to Community First Partners, LLC,*
> *Celsius SPV Investors, LP, and*
> *Celsius New SPV Investors, LP*
>
> **JONES DAY**
> Joshua M. Mester
> 555 South Flower Street Fiftieth Floor
> Los Angeles, CA 90071
> Telephone: (213) 489-3939
>
> *Counsel to CDP Investissements Inc.*

Other Parties:

> **WHITE & CASE LLP**
> David M. Turetsky
> Kimberly A. Havlin
> Samuel P. Hershey
> 1221 Avenue of the Americas
> New York, NY 10020

Telephone: (212) 819-8200

**WHITE & CASE LLP**
Michael C. Andolina
Gregory F. Pesce
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd. Miami, Florida 33131
Telephone: (305) 371-2700

**WHITE & CASE LLP**
Aaron E. Colodny
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700

*Counsel to the Official Committee of Unsecured Creditors*

**KIRKLAND & ELLIS LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

**KIRKLAND & ELLIS LLP**
Patrick J. Nash, Jr., P.C.
Ross M. Kwasteniet, P.C.
Christopher S. Koenig
Dan Latona
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Counsel to the Debtors and Debtors-in-Possession*

## NOTICE OF ERRATA

In the original Motion attached as Exhibit B, in footnote 13, we stated "All rights reserved, including under choice of remedies and Section 541 of the Bankruptcy Code. Nothing in this filing should be construed as a statement that the contract was clear and unambiguous generally with respect to the Briefed Legal Issue or otherwise, or that we do not own our crypto or have other claims and causes of action, including under constructive trust or pre-petition breach of contract." We intended to state as follows: "All rights reserved, including under choice of remedies and Section 541 of the Bankruptcy Code. Nothing in this filing should be construed as a statement that the contract was ambiguous with respect to the Briefed Legal Issue or unambiguous generally or that we do not own our crypto or have other claims and causes of action, including under constructive trust or pre-petition breach of contract." The Bankruptcy Court did not address these arguments in its order.

## CONSENT TO ELECTRONIC SERVICE

We hereby consent to receive electronic service of notices and documents related to this bankruptcy appeal. We affirm that:

1. We have regular access to our e-mail accounts and to the internet and will check regularly for Notices of Electronic Filing;

2. We have established PACER accounts;

3. We understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that we will not receive paper copies of case filings, including motions, decisions, orders, and other documents;

4.  We will promptly notify the Court if there is any change in our personal data, such as name, address, or e-mail address, or if we wish to cancel this consent to electronic service;

5.  We understand that we must regularly review the docket sheet of this case so that we do not miss a filing; and

6.  We understand that this consent applies only to this case and that if there are additional cases in which we would like to receive electronic service of notices of documents, we must file consent forms for those cases.

Respectfully submitted,

*/s/ Immanuel Herrmann*
Immanuel Herrmann
*Pro Se*
June 20, 2023

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
June 20, 2023

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2023, a true and correct copy of Immanuel J. Herrmann and Daniel A. Frishberg's *Notice Of Appeal* of the June 20, 2023 *Order Denying Immanuel Herrmann and Daniel Frishberg's Motion to Vacate the Customers Claims Opinion and Order* [Dkt. No. 2819] was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers, and the Core/2002 service list[2], and all parties to the appeal of the *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Dkt. No. 2265].

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann
*Pro Se*
June 20, 2023

---

[2] Core/2002 Service List available at https://cases.stretto.com/celsius/ on June 20, 2023.

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*, | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER DENYING IMMANUEL HERRMANN AND DANIEL FRISHBERG'S MOTION TO VACATE THE CUSTOMERS CLAIMS OPINION AND ORDER

Pending before the Court is the motion (the "Motion," ECF Doc. # 2811) of Daniel Frishberg ("Frishberg") and Immanuel Herrmann ("Herrmann," and together with Frishberg, the "Movants") seeking an indicative ruling that the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* ( the "Customer Claims Opinion," ECF Doc. # 2205) and the related *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "Customer Claim Order," ECF Doc. # 2265 and together, the "Customer Claims Opinion and Order,") and the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* (the "Scheduling Order," ECF Doc. # 1747) would be vacated upon the receipt of a limited remand of the district court, or that the Motion raises a substantial issue, pursuant to Federal Rule of Bankruptcy Procedure 8008, 9024 and Rule 60 of the Federal Rules of Civil Procedure. The Movants have appealed the Customer Claims Opinion and Order and that appeal is currently pending. *See* Case No. 1:23-cv-02882-JLR (S.D.N.Y). For the reasons explained below, the Motion is **DENIED**.

As an initial matter, the Movants are correct that the Court does not have jurisdiction to *grant* the Motion because an appeal of the relevant order is pending. The Court does, however, have jurisdiction to *deny* the Motion. While the federal rules do permit a trial court to "relieve a party or a party's legal representative from a final judgment," *see* Fed. R. Civ. P. 60(b), "this

circuit has repeatedly held that the docketing of a notice of appeal' ousts the district court of jurisdiction except insofar as it is reserved to it explicitly by statute or rule.'" *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (citing *Ryan v. United States Line Co.*, 303 F.2d 430, 434 (2d Cir.1962)). As a result, the district court may grant a Rule 60(b) motion, only if it obtains permission from the circuit court, but it does not need such permission to deny the motion. *Id.* These principles have also been applied in the bankruptcy context. *See In re Adelphia Commun's. Corp.*, 327 B.R. 175, 178 n.3 (Bankr. S.D.N.Y. 2005) (noting the second circuit's legal framework regarding Rule 60(b) motions once an appeal has been filed).

Under Federal Rule of Bankruptcy Procedure 8008(a), where, as here, a party files a "timely[1] motion in bankruptcy court for relief that the court lacks authority to grant because of an appeal," the Court has three options: 1) defer considering the motion; 2) deny the motion or 3) state either that the bankruptcy court would grant the motion if the court where the appeal is pending remands for that purpose or state that the motion raises a substantial issue. Here, the Court proceeds with option two and denies the Motion.

Bankruptcy Rule 9024 makes Federal Rule of Civil Procedure 60 applicable in bankruptcy cases. "[A]ll orders of the bankruptcy court are subject to Rule 60 F. R. Civ. P." FED. R. BANKR. P. advisory committee note. Federal Rule of Civil Procedure 60 contains six grounds for which the court may grant relief from an order or judgment. Those grounds are: "(1) mistake, inadvertence, surprise, excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, or it is no longer equitable; or (6) any other reason that justifies

---

[1] The Court assumes for the sake of analysis, but does not rule, that the Motion was timely filed under Rule 60(b) of the Federal Rules of Civil Procedure. For the avoidance of doubt, the rights of all parties in interest to object to the Motion as untimely are expressly reserved.

relief." *See In re: Residential Capital, LLC*, 2015 WL 1636440, at *4 (Bankr. S.D.N.Y. Apr.

10, 2015) (internal quotations omitted) (citing FED. R. CIV. P. 60(b)). Bankruptcy courts view a

motion seeking relief pursuant to Federal Rule 60(b) as an extraordinary remedy. *See, e.g.*,

*Pettle v. Bickham (In re Pettle),* 410 F.3d 189, 191 (5th Cir. 2005) (stating that "relief under Rule

60(b) is considered an extraordinary remedy . . . [and that] the desire for a judicial process that is

predictable mandates caution in reopening judgments") (internal citations omitted).

Movants argue[2] that the Customer Claims Opinion and Order should be vacated on two

of these grounds: 1) there is newly discovered evidence and 2) the order is void.[3]  (Motion at 7–

8.)  Both arguments fail.  As to the so-called "newly discovered evidence," the party seeking

relief from judgment on these grounds must demonstrate that the evidence is of such importance

"that it probably would have changed the outcome." *United States v. Int'l Bhd. of Teamsters*,

247 F.3d 370 (2d Cir. 2001).  The Movants do not meet that burden.  They identify no specific

new evidence they have discovered, nor do they explain why such evidence would have changed

the outcome.  (*See* Motion at 8 (referencing declarations the Official Committee of Unsecured

Creditors filed, but not identifying any specific new evidence).)

As to the voidness argument, the Movants argue that the Customer Claims Opinion and

Order is void as to all 600,000 Celsius customers because the Scheduling Order was not served

on customers, even though it was required to be served on the customers.  (Motion at 6.)  They

argue that because they did not have notice of the Scheduling Order, they did not have an

opportunity to participate in the briefing process.  As an initial matter, the Movants do not have

---

[2]      The Court liberally construes the Movants' arguments as required under second circuit law.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

standing to contest the Customer Claims Opinion and Order on behalf of all 600,000 Customers, so the Court considers here only whether the Movants themselves had sufficient notice to be bound by the Customers Claims Opinion and Order. The Court concludes the Movants had sufficient notice and that the Customers Claims Opinion and Order is not void with respect to the Movants.

The Scheduling Order set a briefing schedule regarding the issue (the "Issue") of "which Debtors are liable to the account holders ('Customers') under the global contract (the 'Terms of Use') between Celsius Network LLC and its account holders . . . ." (*See* Scheduling Order ¶ 3.) Paragraph 9 of the Scheduling Order provides that "upon entry of the Order, the Debtors shall promptly serve this Order upon all parties in interest, which may be via email to account holders." The affidavit of service (ECF Doc. # 1777) indicates that the Movants were not served with the Scheduling Order. The Movants argue that the language in paragraph 9 required the Debtors to serve the Scheduling Order on all customers. (Motion at 4.) The Court disagrees. The language recognizes that to the extent the Debtors do serve account holders, they can do so via email. It does not impose a requirement of service on all account holders.

Even if the Court assumes the Movants were "parties in interest" that should have been served with the Scheduling Order, an issue which the Court need not reach, the record shows that the Movants had sufficient notice to meaningfully participant in the litigation regarding the Issue. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Such notice

"must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* (internal citations omitted)

Here, despite not being served with the Scheduling Order, which of course was filed on ECF, the Court is *certain* that the Movants had notice (probably through an ECF docket alert) of the hearing on the Issue and an opportunity to appear and voice their objection for one simple reason: both Movants attended the February 6, 2023 hearing on the Issue. (*See* February 6, 2023 Hr'g Tr. (ECF Doc. # 2016) at 6 (noting Daniel Frishberg and Immanuel Herrmann as "also present in the Courtroom").) Nothing in the record indicates that the Court prohibited the Movants from speaking nor does the record indicate that the Movants attempted to speak at the hearing.[4] While the Movants aver that they were not afforded the opportunity to file a brief, the Official Committee of Unsecured Creditors ("Committee"), the fiduciary for all unsecured creditors, including the movants, filed a brief and participated actively in the briefing and hearing on the Issue. (Motion at 6.) The Court concludes that the Movants received notice reasonably calculated to apprise them of the hearing on the Issue. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). The Committee, the official representative of all unsecured creditors, including Movants, actively litigated the issues decided in the Customers Claims Opinion. The Movants had sufficient notice. The Customer Claims Opinion and Order is not void under Rule 60(b).

---

[4] The Court observes that Mr. Frishberg and Mr. Hermann, while not individually represented by counsel, have appeared on Zoom during most hearings in this case. The Court regularly recognizes *pro se* creditors to speak during hearings when they use the "hand raise" function on Zoom. Mr. Frishberg and Mr. Hermann regularly are given an opportunity to address issues in this case; they have also filed numerous motions and adversary proceedings in the Celsius chapter 11 case.

For the reasons discussed above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 20, 2023
 New York, New York

**_____/s/ Martin Glenn_____**
MARTIN GLENN
Chief United States Bankruptcy Judge

**EXHIBIT B**

**Suggested Hearing Date: June 28, 2023, at 10:00 a.m. EST**
**Suggested Objection Deadline: June 21, 2023, at 4:00 p.m. EST**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |

**NOTICE OF MOTION TO VACATE THE OPINION AND ORDER REGARDING WHICH DEBTOR ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT CLAIMS UNDER THE TERMS OF USE AND THE ORDER (I) SETTING A BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that Celsius Network LLC, *et al.,* customers Immanuel J. Herrmann and Daniel A. Frishberg have filed a Motion to (the "Motion") asking the Court to enter an indicative order stating that the *Opinion* and *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* [Dkt. Nos. 2205 and 2265] and the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* [Dkt No. 1747] would be vacated upon the receipt of a limited remand from the District Court, or that the Motion rasies a substantial issue, pursuant to Federal Rule of Bankruptcy Procedure 8008, 9024 and Rule 60 of the Federal Rules of Civil Procedure.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Local Rule 3008-1 and at the direction of the Court, no oral argument shall be heard on a motion to reconsider an order of allowance or disallowance of a claim unless the Court grants the motion and specifically orders that the matter be reconsidered upon oral argument. If a motion to reconsider is granted, notice and a hearing shall be afforded to parties in interest before the previous action taken with respect to the claim may be vacated or modified.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Respectfully Submitted,

Daniel Frishberg, *Pro Se*
June 14, 2023
/s/*Daniel A. Frishberg*
Santa Clara County, California

Immanuel Herrmann, *Pro Se*
June 14, 2023
/s/*Immanuel Herrmann*
Silver Spring, Maryland

Immanuel J. Herrmann
Daniel A. Frishberg
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[2] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION TO VACATE THE OPINION AND ORDER REGARDING WHICH DEBTOR ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT CLAIMS UNDER THE TERMS OF USE AND THE ORDER (I) SETTING A BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF

Immanuel J. Herrmann and Daniel A. Frishberg, Celsius Network LLC, *et al.* customers

("**Mr. Herrmann**," and "**Mr. Frishberg**;" collectively, "**We**," and the "**Movants**") hereby file

this Motion (the "**Motion**") to enter an indicative order stating that the *Opinion* and *Order*

*Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms*

*of Use* [Dkt. Nos. 2205 and 2265] and the *Order (i) Setting a Briefing Schedule and (ii) Granting*

*Related Relief* [Dkt No. 1747] would be vacated upon the receipt of a limited remand of the

District Court, or that it rasies a substantial issue, pursuant to Federal Rule of Bankruptcy

Procedure 8008, 9024 and Rule 60 of the Federal Rules of Civil Procedure. In support of the

Motion, we respectfully state as follows:

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Overview of the Motion**

On May 10, 2023, while doing research for a pending appeal of the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**TOU Order**," "**Briefed Legal Issue Order**" and "**Contract Claims Order**"), Mr. Herrmann read the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* (the "**Order Setting a Briefing Schedule**," and the "**Briefing Order**" Dkt. 1747) for the first time—and discovered that it imposed the results of a future Contract Claims Order on all customers "regardless of whether any such party participated in the Briefed Legal Issue process," meaning that it would *override all* future proofs of claim (*See* Order Setting a Briefing Schedule ¶ 6). He also read paragraph 9, which stated that "upon entry of this Order, *the Debtors shall promptly serve this Order upon all parties in interest, which may be via e-mail to account holders.*" (Emphasis added). He then investigated whether *he* had been served by e-mail, as paragraph 9 *required*, and could find <u>no record of such service</u>. He then contacted Mr. Frishberg, and Mr. Frishberg <u>could find no evidence of service either</u>.

After checking to see if we were served (as we were required to be), and finding no evidence of it, we emailed the Debtors to request information on service on May 11. Then, on May 15, 2023, having not heard back, we sent a formal letter to the Debtors requesting information on service. The Debtors confirmed the same day that the Affidavits of Service "speak for themselves" and were, therefore, the only form of service that occurred.

The bottom line is that the Order Setting a Briefing Schedule was ***not served on approximately 99.9% of Celsius account holders***, despite the this Court's *requirement* that the

Debtors "promptly serve this Order upon all parties in interest, which may be via e-mail **to account holders**." *Ibid.* (Emphasis added.)

To be clear, it is not the fault of the Series B Preferred Holders that this service did not happen. They *likely* intended that it be served on these 600,000 customers, the parties to the terms of use (as we believe did the Debtors; we believe their failure to serve the Order Setting a Briefing Schedule was a mistake, which can happen to anyone since it was in the middle of the holiday season.) Regardless of the parties' intentions, the result is the same: **_over 600,000 customers–who were all known creditors–were not served_** and could not participate in the Briefed Legal Issue by filing a brief.

This Court had correctly mandated that this Order Setting a Briefing Schedule be served on approximately 600,000 account-holder customers who were parties to the Terms of Use in the Briefing Schedule—including the Movants. In addition to ¶9 of the Briefing Order, this Court's own order on service, the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* (Dkt. No. 1181) (the "**Amended Case Management Procedures**") in force at the time, case law in this and other districts and circuits (along with Supreme Court precedent), and even this Court's own past rulings are crystal clear: An order that impacts certain parties' rights irreversibly, in which such parties have a *particularized interest* as here—and where such a party is a ***known*** creditor, as all of the approximately 600,000 Celsius customers are—***must*** be served on those parties in interest.

**The fatal lack of service—and the corresponding lack of personal jurisdiction with respect to us and 600,000 other customers _alone_—is enough to vacate these orders, or, in the alternative, reopen the records.**

The fact that the order was entered *only **a mere** nine* days before a brief was due <u>over the holidays</u> adds additional fuel to the fire. This likely further prejudiced even the extremely few customers who ***did*** see the scheduling order between December 19 when it was entered and December 28 when briefs were due. (For avoidance of doubt, as we cover in our declarations, ***neither of us*** knew we had missed our chance to participate ***generally*** until some time in January. Furthermore, neither of us reviewed the actual Briefing Order—or read it—until May 10, 2023.) This means we did not know the extent to which our rights were impacted or that, pursuant to ¶6, the Briefing Order required going into the litigation that, regardless of how thin a record or shaky a case the Series B Preferred holders presented, "the Court's findings of fact, conclusions of law, rulings and orders regarding the Briefed Legal Issue shall be binding on all account holders and other parties in interest for all purposes, including in connection with confirmation of a chapter 11 plan, in these cases, regardless of whether any such party participated in the Briefed Legal Issue process." Having not read that language until May 10 and informally raised these issues at the May 17 omnibus hearing, we were not able to file for relief until now. How many other customers (who are not as active as we are) out of 600,000 ***never even read*** the Briefing Order because it was never served?

As a threshold matter, because of the total lack of service to 600,000 ***<u>known</u>*** creditors—not to mention the fact that the ***<u>mere</u>*** nine days was insufficient even for the few who

did see it where this was tantamount to a bar date and 21 days should have been required—**the order should be _vacated_ under Federal Rule of Civil Procedure Rule 60(b)(4) because it is void, at least with respect to the approximately 600,000 _known_ creditors[3] who were never served and therefore never had notice and an opportunity to participate**.[4] This has been true for nearly 150 years. *See Pennoyer v Neff*, 95 US 714, 728 (1877) (holding that proceedings that affect the rights and obligations of parties over whom a court does not have personal jurisdiction violate due process, and any resulting judgment may be unenforceable.)

In the alternative, all 600,000 customers who were not served—but were ordered by this Court to be served pursuant to ¶9 of the Briefing Schedule, the case management procedures in force at the time, the Bankruptcy Code, the Bankruptcy Rules, and constitutional due process requirements—must be relieved from the order under Rule 60. (And, if individual motions are required to be relieved from the order, the only equitable thing is for the Court order a process for customers to opt out of the order by filing a contract claim for their crypto against all debtor entities through a timely-filed proof of claim.)

---

[3] We do concede, that there are arguments which could be made that Custody, Loan, and Withhold Account Holders may be able to be bound by the order due to having had *ad hoc* groups which attempted (at least in the instance of Custody and Loans) to represent all members of the same class, and those same *ad hoc* Groups *choosing* to not participate even though they were served. Alternatively, actual members of the committees who are definitely represented via those committees as clients of the firm, may be bound, which is more likely. We take no position on such arguments at this time.

[4] *See Affidavit of Service*, Dkt. No 1777 and *Supplemental Affidavit of Service,* Dkt. No. 2352. *See also Customer-Appellants' May 11, 2023 Letter to Celsius* (**Exhibit A**) and *Emails to Celsius* (**Exhibit B**.) *See also Declaration of Immanuel J. Herrmann in Support of the Motions to Vacate and Expand the Record* and *Declaration of Daniel A. Frishberg in Support of the Motions to Vacate and Expand the Record* (filed contemporaneously.)

In **addition,** there is cause to re-open the record under various subsections of Rule 60.[5]

There is **_ample_** new evidence to enter into the record, evidence which we and other customers

could not enter prior through diligence or have obtained, such as—but not limited to—the

evidence[6] that the UCC recently entered into the record in other ongoing litigation. *See*, *inter*

*alia,* the evidence entered by the UCC in litigating the *Motion of The Official Committee of*

*Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims*

*Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the*

*Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in each Case*

*Pursuant to Bankruptcy Rule 7023,* (Dkt. No. 2670) and associated declarations (Dkt. Nos. 2672,

2673, 2674, 2699.)


### There are additional due process issues that add fuel to the fire

We do have other *very* serious due process issues with the Series B Preferred Holders,

which add fuel to the fire. One is, quite simply, boxing out customers from this litigation by

supporting the entry of Order Setting a Briefing Schedule with *far less* than 21 days' notice (but,

in fact, *only* 9 days' notice from entry of the order on December 19, until briefs were due on

December 28) on an order that was tantamount to a bar date, and possibly more meaningful than

one for most customers, practically speaking. In a recent appeal of the Customer Class Claims

Issue now pending dismissal (Dkt. No. 2651 in this case and Case No. 23-CV-3920, Dkt. No. 3

in the District Court), in their *Questions and Designation* question 1, the Series B Preferred

Holders stated that "the [Celsius] Committee [of Unsecured Creditors] cannot act on behalf of

---

[5] In addition, NOT in the alternative.
[6] To be clear, we still have not gotten access to the lion's share of discovery/other information. Mr. Frishberg received access to the UCC's redacted exhibits for their complaint on May 24th, 2023. Mr. Herrmann received access to the UCC's redacted exhibits for their complaint on May 25th, 2023.

individual creditors" and that "the Committee is not and cannot be a class member." Yet, they *expressly* supported a briefing schedule on the Briefed Legal Issue where the *only* required participants were the Debtors, the UCC, and themselves, but **no customers (by their definition) and no parties to the terms of use were required to participate, and in the end, none did—making this tantamount to a default judgement, according to the arguments they now make in this Court and the District Court**. Ironically, in supporting a potential default judgment, according to their own definition of who has standing to represent customers (only the customers themselves but not the UCC or the Debtors), the Series B Preferred Holders stated as follows: "Not only is the Briefing Schedule a critical element of a broader agreement between the Debtors and the Series B Preferred Holders resulting from months of negotiations, but it would also allow for an efficient and fair process for resolving the Briefed Legal Issue, which would enable these cases to move forward expeditiously *while safeguarding all parties' due process rights*." (Emphasis added.)

We contend that this is invited error and that the Series B Preferred Holders *expressly* waived the issue of who can represent customers in litigation back when they litigated the Briefed Legal Issue that we are seeking to vacate, or, more likely, they intentionally set the stage to decide this controversy by default by their own standards, violating customers' due process rights while preaching about due process. Taking the position in another appeal before the SDNY District Court on a related issue that the UCC *cannot* represent customers, they cannot in good faith take the position with respect to this Motion that individual customers, or parties to the Terms of Use, had *any* representation with respect to the Briefed Legal Issue by proxy (and we hope they don't even try; if they did, such attempts would be hypocritical, inconsistent with their

other statements they made, and the Court should strike such arguments under the doctrine of

judicial estoppel or just the principle that you can't "talk out of both sides of your mouth.")

## Jurisdiction

This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334 and

to rule on an indicative basis under Rule 8008 of the Federal Rules of Bankruptcy Procedure.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has ruled that the

Southern District of New York is proper venue pursuant to 28 U.S.C. §§ 1408 and 1409. The

indicative ruling sought is pursuant to Federal Rule of Bankruptcy Procedure 9024 and Rule 60

of the Federal Rules of Civil Procedure.

## Brief Summary of the Legal Issue

The primary legal question before this Court is whether the order was required to be

served on the Movants pursuant to ¶9 of the Briefing Schedule, the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, and the U.S. Constitution under *numerous*

precedents—in addition to approximately 600,000 other customers who were all ***known***

***creditors***[7] of Celsius and were parties to the Terms of Use[8] (unlike the Preferred Series B

Holders, who were not parties to the Terms Of Use)—and, if due to lack of service, the order is

---

[7] All, or substantially all, creditors in these cases who are account holders are **known creditors**. *See Schedules, for example* those in Dkt. No. 974, accessible here, which we incorporate by reference, as the document is 5,048 pages:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910062280000000017.pdf
*See also*: *Declaration of Immanuel Herrmann,* and *Declaration of Daniel A. Frishberg* filed contemporaneously.

[8] While we, at some point, purportedly agreed to the Terms of Use, we reserve all rights to argue that portions of the Terms of Use were illegal, unconscionable, unenforceable, were modified with respect to us or with respect to all, etc. — and that they are not binding on us and/or others similarly-situated. We also reserve literally any and all rights

void ***ab initio***. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

("An *elementary* _and_ fundamental **requirement** of due process in any proceeding which is to be

accorded finality is ___**notice**___ reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and **afford them _an opportunity to present their_**

___**objections**___.") (emphasis added). *See also*, Briefing Schedule ¶ 9 (requiring that "Upon entry of

this Order, the Debtors ___**shall promptly serve**___ this Order upon all parties in interest, which may be

via e-mail to account holders") (Emphasis added). *See also*, *Amended Case Management*

*Procedures* Dkt. No. 1181, page 12 (requiring that "All entities with a particularized interest in

the subject matter of a specific Court Filing, including the entity filing the Request for Relief, are

"Affected Entities" and ___**shall be served**___ with all Bankruptcy Court Filings relating to that

interest.") (Emphasis added.) *See also*, Customer-Appellants' *Notice of Appeal,* question 6,

preserving, generally, due process issues on appeal: "In *Mullane v. Central Hanover Bank &*

*Trust Corporation*, 339 U.S. 306, 313 (1950), the Supreme Court found that many controversies

have raged about the cryptic and abstract words of the Due Process Clause, but there can be more

doubt that at a minimum they require that deprivation ... of property by adjudication be preceded

by notice and opportunity for hearing appropriate to the nature of the case. This matter was

litigated between the UCC and Debtors on one side and the Preferred Series B on the other.

Given that customer interests may not have been adequately represented and there was a lack of

actual notice that this decision could impact customer claims for a substantial percentage of the

estate's assets, were customers denied reasonable notice and opportunity to present their

objections in violation of due process?" (Internal quotations omitted.)


While we did not know about ¶9 or the other terms of the Briefing Schedule when we

submitted our Designation and Questions on Appeal, which **_absolutely_** required (and in fact

ordered) service, we did, however, know that there was something wrong from a due process

perspective—for the simple reason that no customers were present, or represented, in this

matter—which is akin to a default judgment on a matter that has a practical impact may exceed

impact of an actual Bar Date, when it comes to the allocation of customer contract claims.  As

the Preferred Series B said in their recent reply to our motion to dismiss their appeal of the Class

Claims order in the District Court, "given the Bankruptcy Court's decision on customer claims

liability (*see Memorandum Opinion Regarding Which Debtor Entities Have Liability for

Customer Claims Under the Terms of Use* [Bankr. Dkt. No. 2205]), **_account holders have no

claims against CNL and Appellants, equity holders at CNL, stand to recover in full_**."

(Emphasis added; See p. 5-6 of S.D.N.Y. District Case 1:23-cv-03920-JHR.) **_This represents a

bigger impact on customers than the bar date itself, and we contend, in addition to the fatal

lack of service, 21 days' notice were required as well—or else a express finding of cause by

this Court for not giving 21 days' notice (no such cause was given)._** The Court's statement in

the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims

Under the Terms of Use* [Dkt. No. 2205] that the Preferred "may very well end up recovering

nothing," and in its denial of our Motion for a Stay Pending Appeal that this decision "may make

absolutely no difference to the Creditors' recoveries" [Dkt. No. 2205] does not undo the

deprivation of creditors' constitutional rights to **_participate_** in this litigation under *Mullane*. Nor

does it restore restore customers' **_voting rights_** with respect to plan confirmation based upon a

Chapter 11 plan where customers assert contract claims at all debtor entities. Nor would it excuse

using funds which are due to customers who cannot be bound by this order because of lack of

personal jurisdiction to fund a settlement for the Series B Preferred Holders that violates the

absolute priority rule. Such a settlement is absolutely prohibited by *Czyzewski v. Jevic Holding Corp*. And, because this order is void with respect to 600,000 customers, it cannot be binding on them.

While the Series B Preferred Holders "may very well end up recovering nothing in spite of this order," this Court also "appreciates that this decision may deprive Customers of the full value of the Company." Therefore, customers must be relieved from it. The mere fact that this order *may* make no difference to customers' recovery does not excuse the lack of service and the violation of due process or mean it *will* make no difference; the Court is ***required*** to vacate the order or re-open the record; relief is **not** discretionary under Federal Rule of Civil Procedure 60(b)(4), and we and other customers who were not served with the Briefing Schedule **must not** be bound by it.

## Brief Summary of our Request for Relief

Given the critically fatal failure to serve 600,000 Celsius customers with the Customer Contract Claims Briefing Schedule, the Court is ***required*** to vacate or re-open the record for the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**") and the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* under Federal Rule of Civil Procedure 60(b)(4) and find that both are is void *ab initio* as a matter of law (at least with respect to ourselves and the 600,000 Celsius Earn customers who were not served.) Fully vacating the order may make the most sense, given the scope of the issue, and that bankruptcy court is a court of equity).

In the alternative, we ask for the record to be reopened. The Court could, perhaps, reopen the record by allowing for briefs to be filed by customers, supplemental evidence to be entered into the record, supplemental evidence to be considered, and supplemental oral argument, where customers who enter evidence will have equal time to argue against the Series B Preferred Holders' counsel with respect to each piece of customer evidence entered. But such a process should protect due process no less than the original litigation schedule and allow for customers to make their own presentations to the Court, just as the Series B Preferred Holders did. Speaking more practically, there are multiple streams of litigation right now with the Series B Preferred holders. This order can simply be vacated and the litigation combined with the other ongoing litigation on non-contract claims.

**History of the Order Setting a Briefing Schedule, the Opinion, the Order, and the Appeal**

On December 19, 2022, after litigation on the question of which entities customers had contract claims against (also known as the "Briefed Legal Issue"), this Court entered the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief*, Dkt. No. 1747 (the "**Order Setting a Briefing Schedule**"). The parties to the litigation were the Debtors, the UCC, and the Series B Preferred Holders. **No other parties participated in the litigation**.

On March 9, 2023, this Court released the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Dkt. No. 2205] (the "**Opinion**"). The Opinion held that, when it comes to which entities are responsible for customer contract claims, "careless drafting of the terms of use leaves the answer unclear" and that "the Court concludes based on the record that the contract is ambiguous." The Court went on to state

that "Considering the **extrinsic evidence** [limited to what was in the record], the Court finds, based on a preponderance of the evidence [limited to what was in the record], that the parties to the terms of use intended that only LLC, and not any other Debtor or non-Debtor affiliates, are liable to Customers on contract claims under the terms of use." (Text in brackets added.) The Court went on, *at length* about the record, the record being closed, failures to compel discovery by the only three parties to the litigation, and the *lack* of a record, stating that "relatively little discovery regarding the Issue took place"; and "None of the parties [limited to the UCC, the Debtors, and the Series B Preferred Holders, i.e. those who were on notice and had the opportunity to file briefs] sought any Court intervention, despite the Court's expedited procedures for dealing with discovery disputes. Consequently, the Court considers the record closed, and the Court's decision is based on the record before it."

On March 17, 2023, this Court issued the *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Dkt. No. 2265], ordering that "Based upon the findings of fact and conclusions of law set forth in the Opinion, only Celsius Network LLC ('LLC') is liable for customer contract claims under the Terms of Use, affiliates of LLC are excluded from contract liability under the Terms of Use, and Customers may assert contract claims arising under the Terms of Use against only LLC and not against any other entity."

On March 31, 2023, the Committee of Unsecured Creditors filed a timely appeal pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1). *See Notice of Appeal* [Dkt. No. 2356]. On April 5, 2023, Immanuel Herrmann and Daniel Frishberg filed a timely appeal pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(3). *See Notice of Appeal* [Dkt. No 2375].

On May 10, 2023, Movants learned that the Court expressly ordered that the Order Setting a Briefing Schedule be served upon account holders: "Upon entry of this Order, the Debtors shall promptly serve this Order upon all parties in interest, which may be via e-mail to account holders." *Ibid.* at 9.

On May 11, 2023 the Movants discovered that this service ***never*** took place with respect to themselves.

On May 15, 2023 the debtors confirmed that the only parties receiving service were those in two affidavits of service. *See Declarations of Immanuel J. Herrmann and Daniel A. Frishberg in Support of Motion to (i) Vacate or (ii) Reopen the Record of the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* and *Affidavits of Service.*

On June 13, 2023, certain procedural relief was granted to the appellants, and the appeals were consolidated as S.D.N.Y. Case No. 23-cv-02882 (JLR). On June 12 and 13, Movants informed the District Court that we would be seeking to file a Rule 60 Motion in the Bankruptcy Court, and asked District Court to bifurcate briefing or put the appeal into abeyance during the pendency of the Rule 60 Motion. On June 14, after researching case law in this district, Movants decided to first file for an indicative ruling under Rule 8008 before seeking a limited remand if needed.

**Statement of Facts Relevant to this Motion**

1. **Paragraph 9 of the Briefing Schedule required actual notice to be received by nearly 600,000 customers who were all *known creditors*. However, the court-ordered notice never happened.** For evidence of this, see the attached affidavits of service, our letter to the Debtors, and our declarations (which also include copies of the Debtors' replies to us.)

2. There were *a mere nine days* between entry of the order on December 19, 2022 and the deadline to file a brief on December 28, 2022. Joinders, which were due shortly thereafter, barred any arguments that didn't "uniformly apply" to *all* customers. Yet, the Preferred *somehow* prevailed using evidence that didn't "uniformly apply" to all customers, since it was seen by only 55% of customers. Presumably those filing a full brief could enter such evidence, but those filing joinders pursuant to the Briefing Order could not. (This is moot because no joinders were filed). What is the case is that, on 9 days' notice, with no service, December 28, 2022 was a *de facto* bar date for customers.

3. There was a critical failure to notify Customers about the impact of the motion on their future contract claims *more generally*; the notice did not substantially comply with the rule for plans that contain injunctions under Federal Rule of Bankruptcy Procedure Rule 2002(c)(3), **WHICH REQUIRE BOLD, ALL CAPS OR SIMILAR**, nor did it comply with the *21-day*-notice requirement under Rule 2002(a)(7). Whether these rules absolutely apply to the Briefing Schedule or not, the spirit of those rules matters; it would have cost next-to-nothing to comply (it also would have cost significantly less time, and money than the alternative, such as this appeal and this motion to reconsider). Nor was

there cause to waive the 21-day requirement. A lack of compliance made it even easier to miss (for the few customers who *might have* found this on the docket without being served, which for avoidance of doubt does not include us) and *even* further irreparably prejudiced customers, and this sets a dangerous precedent for future cases to force creditors to lose substantial rights in the most procedural of documents, akin to burying a notice of a bar date in a footnote and calling that service.

4. The un-served briefing schedule was non-descript and difficult to find. A filing that impacted substantial rights of approximately 600,000 creditors was couched as a seemingly unimportant "Briefing Schedule," entered 9 days before briefs were due. The Court correctly ordered it to be served, but it was never served by the Debtors.

5. Because of these fatal deficiencies, neither of us even read the final Briefing Schedule *at all* and found paragraph nine until preparing for our brief on May 10, 2023 (but only realized, generally, that we missed the deadline to file a brief, some time in mid-January), and received confirmation of lack of service on May 15, 2023 from the Debtors.

6. Given this Court's past reluctance to re-open the record, for example when it declined to re-open the record in the Earn hearing, mere minutes after it had been closed, when we discovered that we had missed the deadline to participate in briefing this issue in January, this Court cannot credibly argue that it would have allowed us to file very late briefs, keeping in mind that we didn't know what we didn't know about the Briefing Schedule until May 10, 2023. We didn't know that the Briefing Order existed; therefore, we had no **strong** argument to re-open the record based upon the fatal lack of service until now.

7. Given how active[9] *we are* in these cases, and that we follow the case quite closely, the fact that we didn't read this Briefing Order, likely means that ***almost no*** customers saw the Order Setting a Briefing Schedule. Literally, this was buried to the point where it might as well have been an administrative paper like a certificate of service. Objectors may try to make arguments that we see everything "through Stretto" or had some kind of "constructive notice." Not so. Nor would such service have been acceptable by case law in this district or any district. We don't read certificates of service, or every little scheduling order. This looked like that. We weren't served, we had no reason to look for such a nondescript, seemingly unimportant document, and we didn't see it until Mr. Herrmann found it on May 10, 2023. In any event, case law on this matter is clear: being active in a case is no excuse not to serve a critical document such as this one where substantial rights are impacted and where the creditor has a particularized interest.

## ARGUMENT

**The Parties In Interest Were All *Known* Creditors. The Case Law Regarding Known Creditors is Crystal Clear, and <u>the Requirements Were Not Met</u>.**

All of the approximately 600,000 creditors who were ordered to be served but who were **not** served were ***known*** creditors**,** as numerous versions of the Debtors' own schedules and statements show.[10] As this Court said in *In re BGI, Inc.*, No. 11-10614 (MG), 2012 WL 3245473 (Bankr. S.D.N.Y. Aug. 14, 2012). "It is long-held that known creditors <u>**must**</u> be afforded notice

---

[9] The Debtors described Mr. Frishberg in Dkt. No. 2107 as "a fierce advocate" and purport that "The primary difference between Mr. Frishberg and the Debtors' other account holders is how tirelessly Mr. Frishberg has pursued his Claim", they also describe his actions as "dogged advocacy".

The Debtors stated in Dkt. No. 2105 (about Mr. Herrmann): "For months, Mr. Herrmann has worked to position himself as a leader among Earn and Borrow creditors, including on several of his pleadings that he is an 'Admin of the worldwide Celsius Earn Customer Telegram group' and providing advice to those who have joined his channel."

[10] As one example, we incorporate by reference the Debtors' schedules in Dkt. No. 974: https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910062280000000017.pdf

reasonably calculated, under all the circumstances to apprise them of the pendency of the Bar
Date. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1953). Adequate notice
[for known creditors] entails **actual written notice** of the bankruptcy filing and the bar date. *See
In re Drexel Burnham Lambert Grp., Inc.*, 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993) ... A known
creditor includes both a claimant whose identity is actually known to the debtor or a claimant
whose identity is reasonably ascertainable by the debtor. *In re XOCommc'ns, Inc.*, 301 B.R. 782,
793 (Bankr. S.D.N.Y. 2003) (quoting *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir.
1995))." (Emphasis added; internal quotations omitted. See the foregoing full order for more
case law on, and discussion of, *known* vs *unknown* creditors.)


**A *known creditor*–such as ourselves and 600,000 other customers who were required to be
served–must be provided with actual notice, such as by mail or email, as the Court ordered.**

See *In re Trans World Airlines, Inc.*, 96 F.3d 687 (3rd Cir. 1996) (holding that it is
"well-settled law that a known creditor is entitled to formal notice . . . . ***even where, as here, the
creditor has actual knowledge of the pendency of bankruptcy proceedings generally***.")
(Emphasis added, pointing out that our active status in the cases is meaningless where we didn't
see the filing because we were not served.) More recently, a Delaware bankruptcy court held that
the bar date for filing proofs of claim **cannot** be enforced against a creditor if the notice of the
bar date was not sent by mail to that creditor. *See In re Cyber Litigation Inc.,* No. 20-12702
(CTG) (Bankr. D. Del. Oct. 21, 2021). This is also consistent with this Court's own *Amended
Case Management Procedures* [Dkt No. 1181] in force at the time of this litigation, which stated,
"All entities with a particularized interest in the subject matter of a specific Court Filing,
including the entity filing the Request for Relief, are 'Affected Entities' and shall be served with
all Bankruptcy Court Filings."

**Vacating the Order or are-Opening the Record Under Federal Rule of Civil Procedure 60(b)(4) is <u>Mandatory, Not Discretionary.</u>**

In Rule 60(b)(4): When the Courts of Limited Jurisdiction Yield to Finality, 66 Fla. L. Rev. 881, 887 n.25 (2014), footnote 25, Stephen E. Ludovici references *Bally Export Corp v Balicar, Ltd.*, 804 F2d 398, 400 (7th Cir 1986) (holding that "when the rule 60(b)(4) motion alleges that that 'the underlying judgment is **void** because the court lacked personal or subject matter jurisdiction,' once the court decides that the allegations are correct, 'the trial judge has **no** discretion and **must** grant appropriate Rule 60(b) relief"); *Gulf Coast Fans, Inc v Midwest Electronics Importers, Inc*, 740 F.2d 1499, 1511-12 (11th Cir. 1984) (holding that the district court's refusal to set aside a default judgment constituted **an abuse of discretion** where the presence of personal jurisdiction was not established). (Emphasis added.) *See also* Waldman, Ariel. Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate a Default Judgment for Lack of Jurisdiction. 68 U. Chi. L. Rev. 521 (2001), footnote 7, quoting *Venable v Haislip*, 721 F2d 297, 300 (10th Cir 1983) (stating that if a judgment is void for lack of personal jurisdiction, the court must grant relief); *Textile Banking Co v Rentschuler*, 657 F2d 844, 850 (7th Cir 1981) ("[I]f the underlying judgment is void because the court lacked personal ... jurisdiction ... the trial judge has no discretion and must grant appropriate Rule 60(b) relief."). *See also*, *generally*, Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 11 Federal Practice and Procedure § 2862 (West 2d ed 1995); James Wm. Moore, 7 Moore's Federal Practice [60.25[2] (Matthew Bender 2d ed 1996).; 11 Federal Practice and Procedure at § 2862 ("There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).") (collecting cases).

*Klugh v. United States*, 620 F. Supp. 892 (D.S.C. 1985) dealt with a matter much like this one, albeit, not in a bankruptcy context. There, the Court was clear and unambigious that "under

Rule 60(b)(4), '**the *only* question for the court is whether the judgment is void; if it is, relief from it should be granted.**' *Marquette Corp. v. Priester,* 234 F. Supp. 799, 802 (D.S.C.1964) (quoting *Austin v. Smith,* 312 F.2d 337, 343 (D.C.Cir. 1962)). (Emphasis added.) The Court went on to state that "A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, *__or of the parties__*, **or acted in a manner inconsistent with due process.[11]**" (Emphasis added.) "*Margoles v. Johns,* 660 F.2d 291 (7th Cir. 1981) *cert. denied,* 455 U.S. 909, 102 S. Ct. 1256, 71 L. Ed. 2d 447 (1982); *In re Four Seasons Securities Laws Litigation,* 502 F.2d 834 (10th Cir.1974), *cert. denied,* 419 U.S. 1034, 95 S. Ct. 516, 42 L. Ed. 2d 309 (1975)... In the condemnation judgments challenged at bar, the present plaintiffs who are Bradley heirs, and who … were neither joined as parties nor represented … To determine the rights of persons **not even made parties to the litigation** … is conduct clearly **repugnant to the concept of due process.[12]**"

### The Order Setting a Briefing Schedule Had a Preclusive Effect. It Was Tantamount To A Bar Date and/or an Injunction Barring Creditors from Filing Future Contract Claims Against non-LLC Entities. This Court Ordered it to Be Served on Movants and 600,000 Other Customers. It Wasn't Served and We Suffered Harm from the Lack of Service.

The briefing schedule required creditors to file briefs for allowance of their claims by December 28 or be directed by the Court to file contract claims only against Celsius Network LLC and face potential disallowance and expungement if we do not comply. This impacted our rights no less than setting a bar date under Federal Rule of Bankruptcy Procedure 2002 (and was

---

[11] Even if, in this case, the Court did so unknowingly, i.e. by ordering service on actual parties to the Terms of Use—since that service never happened.

[12] Here, the Committee of Unsecured creditors represented all unsecured creditors, or argued a position, but nobody was counsel for parties to the Terms of Use nor did a single party to the Terms of Use participate individually or through counsel, or a group of parties to the Terms of Use. The UCC had not received any standing to represent customers averse to another party (such as a class certification). The Debtors did not represent customers, but the Debtors' Estates. The Series B Preferred Holders were the only party who had actual representation. This was not an adversarial process where parties to the Terms of Use had **any** representation whatsoever. The judgement is void **ab inito** and must be vacated.

tantamount to a bar date.) A bar date is "the last date for filing claims against the debtor." Black's

Law Dictionary (11th ed. 2019). The briefing schedule was tantamount to a bar date for contract

claims against any entity except Celsius Network LLC (which, as this Court noted, was

"hopelessly insolvent"). The final order that resulted from the litigation was an injunction, going

beyond even findings of fact and conclusions of law to be imposed upon customers and stating

unequivocally that "Customers may assert contract claims arising under the Terms of Use against

only LLC and not against any other entity." *See Order Regarding which Debtor Entities Have*

*Liability for Customer Claims under the Terms of Use* at 1. "An injunction is a writ or order

requiring a person to refrain from a particular act. It may be granted by the court in which the

action is brought, or by a judge thereof, and when made by a judge it may be enforced as an

order of the court." BLACK'S LAW DICTIONARY (11th ed. 2019).


The bottom line is that the Order Setting a Briefing Schedule was ***required*** to be served

on known creditors, but it was not. It was extraordinarily detrimental to the rights of customers

and nothing short of vacatur or in the alternative, a full reopening of the record are the only

acceptable remedies.


### This Order Violated Statutory Entitlements Under the Bankruptcy Code and the Bankruptcy Rules. This <u>Deprived Creditors of Their Substantive and Procedural Rights.</u>

Here, claims filers, including the Movants, both of whom filed timely proofs of claim that

included contract (as well as non-contract) claims against *all* Debtor entities[13], have statutory

entitlements to file claims against ***any and all*** Celsius Debtor entities, have the claim be deemed

---

[13] All rights reserved, including under choice of remedies and Section 541 of the Bankruptcy Code.
Nothing in this filing should be construed as a statement that the contract was clear and unambiguous
generally with respect to the Briefed Legal Issue or otherwise, or that we do not own our crypto or have
other claims and causes of action, including under constructive trust or pre-petition breach of contract.

allowed, and to have notice and a hearing on such claims. 11 U.S.C. § 501 provides that a

creditor may file a proof of claim. 11 U.S.C. § 502(a) and (b) provide that a proof of claim filed

under § 501 is **_deemed allowed_** unless a party in interest objects, and that the court shall

determine the amount of such claim **_after_** notice and a hearing. (Emphasis added.) Additionally,

Federal Rule of Bankruptcy 3003 and Rule 3001(f) states that "A proof of claim executed and

filed in accordance with these rules shall constitute *prima facie* evidence of the validity and

amount of the claim."

 

Quite simply, overiding the *prima facie* rule without notice and a hearing violates the

Bankruptcy Code. This order, **without notice and the opportunity to participate**, is an end-run

around both these statutory entitlements, basic constitutional due process rights, and the

bankruptcy rules, both of which state that creditors may file a contract claim against all Celsius

Debtors and get their day in court (i.e. their "notice and a hearing.") *See City of New York v. New

York, New Haven & Hartford R. Co.*, 344 U.S. 293 (1953) ("The **statutory command** for notice

embodies a basic principle of justice -- that a reasonable opportunity to be heard **must precede

judicial denial of a party's claimed rights**.") (Emphasis added.) Here, **no notice** was provided to

99.9% of those who were supposed to be served, including ourselves; **no customers** whatsoever

participated in the controversy (by the Series B Preferred's Definition of customers, which

expressly does not include the UCC); **no customers** had representation in it[14]; and that **almost no**

customers were served with the Briefing Schedule. This violates claims filers' constitutional

right to a notice and a hearing **and** our statutory rights under the 11 U.S.C. § 502(a) and (b). It

also violates Federal Rules of Bankruptcy Procedure 3003 and 3001. Movants, and the

---

[14] According to the Series B Preferred Holders, and according to us, since the UCC had not asked for, nor received, class certification or leave of the Court to represent a class on the Briefed Legal Issue.

approximately 600,000 other customers who were not served with and were not timely aware (or aware at all) of this briefing schedule, **cannot**, and **must not**, be bound by it. As noted earlier, this Court has stated in the past that due process *requires* notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[15] In addition, "[w]here the Bankruptcy Code and Bankruptcy rules specify the notice period required prior to the entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect."[16] And here, both the code, 11 U.S.C. § 502(a) and (b), and the Bankruptcy Rules require notice and a hearing to all known creditors, and the only possible dispute is *how much* notice (but no service to 99.9% of parties in interest clearly doesn't meet the bar; and nine days' notice without service *certainly* does not.) In fact, 11 U.S.C. § 502(b)'s statutory requirement that "the court shall determine the amount of such claim ***after*** notice and a hearing" (Emphasis added) raises questions over **whether these orders could even properly be issued before the Bar Date** under the bankruptcy code, or whether the Court erred and **must** wait until the Bar Date is closed and all claims are filed, to entertain such a motion, after which, the bar date could have been re-opened (as it was here) to the extent the order would have required claims to be amended as a result of the order.

### Other Procedural Deficiencies Made the Situation Even Worse

The lack of service is, alone, enough to vacate or reopen the record. But, even if the Court and/or objectors attempt to make a hopeless case there was constructive notice for the Movants (there was not) there were other glaring procedural deficiencies as well, which

---

[15] *United Student Aid Funds, Inc. v. Espinosa* 559 U.S. 260, 272 (2010).
[16] *Baldwin v Credit Based Asset Servicing and & Securitization,* 516 F.3d 734, 727 (8th Cir. 2008).

impacted our substantive rights to our prejudice. In this case, the briefing schedule had fixed a

date of December 28, 2022 (tantamount to a bar date) to file a brief or else be subject to the

findings of fact and conclusions of law of the order and accept a potential *de facto* injunction

which bound **future** claims filers; it categorically overrode future, unfiled proofs of claim; it

overrode the importance of a *future* **bar date** when it comes to substantive rights, and further

<u>required the Debtors to enforce the order</u> by "seek[ing] to disallow and expunge from the claims

register all proofs of claim filed by account holders against those Debtors that the Court Ruling

determines not to be liable to such account holders, to the extent such proofs of claim are

inconsistent with the Court Ruling."[17]


    As the Series B Preferred Holders noted in a recent filing, Federal Rule of Bankruptcy

Procedure 2002 **requires that twenty-one days advance notice be given** regarding "the time

fixed for filing proofs of claims pursuant to Rule 3003(c)." Yet the Briefing Schedule also *only*

allowed <u>nine days to file a brief</u>, *rather than 21 days*, from the date of the entry of the order.[18]

---

[17] *See* Briefing Schedule at 6: "The Court's findings of fact, conclusions of law, rulings and orders regarding the Briefed Legal Issue shall be binding on all account holders and other parties in interest for all purposes, including in connection with confirmation of a chapter 11 plan, in these cases, regardless of whether any such party participated in the Briefed Legal Issue process. In the event that the Court concludes that the account holders do not have claims against every Debtor based on the Terms of Use (the "Court Ruling"): (i) the Debtors shall amend their Schedules to remove account holder claims scheduled against any and all Debtors found not to be liable to account holders pursuant to the Court Ruling, within five (5) business days of such ruling; (ii) the Debtors shall provide notice of any such amendment to all affected creditors within five (5) business days of the filing of such amendment; and (iii) the Debtors (or any successor to the Debtors pursuant to a chapter 11 plan) shall, prior to any deadline for filing objections to claims set by the Court pursuant to a chapter 11 plan or otherwise, seek to disallow and expunge from the claims register all proofs of claim filed by account holders against those Debtors that the Court Ruling determines not to be liable to such account holders, to the extent such proofs of claim are inconsistent with the Court Ruling."

[18] The judgment is void *ab initio* due to lack of personal jurisdiction over the Movants and nearly 600,000 other creditors due to lack of service—because it was never served on parties to the terms of use, in violation of Chief Judge Glenn's order, the Case Management Procedures, and due process requirements. It *also* should be voided because nine days to file a brief, with no cause given by the Court for the shortened time, given that this order overrides customers' proofs of claim, is likely "inconsistent with due process of law." *See Otte v. Manufacturers Hanover Commercial Corp.,* 596 F.2d 1092, 1099 (2d Cir. 1979) (quoting 11 Wright Miller, *Federal Practice and Procedure,* § 2862 at 198 (1973)).

FRBP 2002 further provides that, "if a plan provides for an injunction against conduct not otherwise enjoined under the Code, the notice required under Rule 2002(b)(2) shall: (A) include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction; (B) describe briefly the nature of the injunction; and (C) identify the entities that would be subject to the injunction."

The Order Setting a Briefing Schedule **did not** comply with the letter *or* the spirit of Rule 2002 in our view, and we contend that it should have complied and such noticing requirements have been met in other filings in these cases, such as bar date notices and the UCC's Class Claims Motion, which contains **RED, BOLD, ALL CAPS LETTERING**. *See* red lettering at the top of *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* (Dkt. No. 2399).

### The Opinion and Orders are Void Due to Lack of Notice, Lack of Service, and Lack of Personal Jurisdiction and <u>Must Be Vacated</u>

Due process *requires* notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[19] Here, there was no notice *at all* of 600,000 creditors in spite of a Court Order to provide it. In addition, "[w]here the Bankruptcy Code and Bankruptcy rules specify the notice period required prior to the entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect."[20] Here, among all the other reasons service was required, the fact the Court had ordered it is also key.

This Court correctly had ruled that *__service was necessary for all parties in interest__*, and this Court ordered that such service take place in ¶9 of the Briefing Schedule. This comported

---

[19] *United Student Aid Funds, Inc. v. Espinosa* 559 U.S. 260, 272 (2010).
[20] *Baldwin v Credit Based Asset Servicing and & Securitization,* 516 F.3d 734, 727 (8th Cir. 2008).

with the Federal Rules of Bankruptcy Procedure and the Amended Case Management Procedures which expressly required that service be provided to "*Affected Entities,*" stating that "all entities with a particularized interest in the subject matter of a specific Court Filing, including the entity filing the Request for Relief, are 'Affected Entities' and shall be served with all Bankruptcy Court Filings."

Notably, on top of all of this, **not a single representative or member of the group with the particularized interest of a customer** briefed the matter and only a *negligible* number of those with this particularized interest were even served (only a few creditors who filed notices of appearance and were on the Core/2002 list.) **No *pro se* creditors participated**. **No *represented* creditors participated (there is a reason class certification is required before the UCC can represent a class.) Nor was anyone (such as the UCC) appointed by the Court to *represent* the Customer class, or parties to the Terms of Use as a class.** **Customers had no dedicated representation before the Court** (and, unlike the Customer Class Claim litigation where this Court gave leave for the UCC to file a class proof of claim, no such leave was given here). The lack of *any* customer or (sole) customer fiduciary appearance is further evidence of the impact of the lack of notice and service. This violated due process for customers and prejudiced customers (as noted in Question 6 of our designation and in general case law on the matter.)[21]

---

[21] While we support the Class Claims Process, the Bankruptcy Court needed to grant the UCC **authority**, however, to represent the customer class in that process, and to file a class claim. *See Order Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* (Dkt. No. 2496.) Doing so was a big deal. *No such authority was granted to the UCC in the Customer Claims matter*. The UCC only had standing to speak in their *general* capacity for *all* unsecured creditors in this matter, not for parties to the Terms of Use *as such*. In addition their position in the Earn litigation is inapposite. While we disagreed with their position there, they were trying to bring property *into* the estate in that litigation, and doing so would benefit all *unsecured* creditors, who they represent. In this litigation, in contrast, they were repping one group of creditors (customers) averse to another purported group of creditors (the Series B Preferred Holders). The hearing quite literally took place **without any directly-impacted parties involved**, and without leave for the UCC, or the Debtors, to represent the impacted class.

In an appeal of an order allowing the UCC to represent customers in filing a class claim, the Series B Holders took the position that the UCC "cannot act on behalf of individual creditors" and "is not and cannot be a class member." *See Appellants' Designation of the Record and Statement of Issues to Be Presented on Appeal,* Dkt. No. 2651. We disagree **where they are given leave of the court to represent the class,** especially where such leave is uncontested. However, this was different. There was **no representation** for individual creditors in this matter, and **no representation** for the class, in this matter. The UCC did not ask the court for, nor did it receive, leave to represent customers averse to the Series B Preferred Holders in this matter, such as the leave they received for class claims. Of course, given the Series B Preferred Holders' own arguments, it would be foolish for them to argue that, somehow, customers were indirectly represented in this matter "via the UCC" or that "the UCC represented customers in the Briefed Legal Issue" as some kind of ambiguous *end run* around the obvious service requirements that were *clearly, and unambiguously* **not** met on this matter—while they say that the UCC has no standing to represent individual creditors averse to them in another appeal. Nor can the Series B Preferred Holders argue that customers had notice and an opportunity to participate. They did not. Under the doctrine of judicial estoppel, or similar, or even just the "don't talk out of both sides of your mouth" doctrine, the Series B Preferred Holders cannot have it both ways (but they may well try to have it both ways).

Federal Rule of Bankruptcy Procedure 9007 also supports our position that service was required because the Court ordered it. It states that "When notice is to be given under these rules, the court **shall** designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given. When feasible, the court may order any notices under these rules to be combined." (Emphasis added) Rule 9022 states that: "*Immediately* on the entry of a judgment or order the clerk **shall** serve a notice of entry in the manner provided in Rule 5(b) F.R.Civ.P. on the contesting parties and on other entities *as the court directs*." (Emphasis added.)

This Court's express requirement that the order be served to **all** parties in interest (which never happened, because the Debtors failed to actually serve this due to mistake, notwithstanding the order)[22] was likely with these requirements in mind. The Court ordered that, "Upon entry of this Order, the Debtors ***shall*** promptly serve this Order upon **all** parties in interest, which may be via e-mail to account holders." (Emphasis added.) This never happened.

**The bottom line is this: There was no service. No notice provided. No reasonably calculated opportunity to participate for 600,000 _known_ creditors, all of whom required <u>actual</u> notice (instead of just hoping they'd simply _somehow_ figure it out themselves within nine days of the entry of the order). Therefore, the order <u>must</u> be vacated or, bare minimum, the record _fully_ reopened.**

**The order must be voided due to lack of service. <u>In the alternative, we meet other requirements under Rule 60 to vacate and/or re-open this matter.</u>**

We meet all the requirements to vacate the order due to lack of service under Rule 60(b)(4). In the alternative, we also meet the requirements for relief under other subsections of Rule 60. Newly discovered evidence that, with reasonable diligence **by individual customers**, could not have been discovered in time to move for a new trial under Rule 59(b), just hit the docket on May 17, 2023 in the UCC's _Motion of The Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in each Case Pursuant_

---

[22] _See Declaration of Immanuel J. Herrmann_ and _Declaration of Daniel A. Frishberg._

*to Bankruptcy Rule 7023.* Mr. Frishberg and Mr. Herrmann just received the evidence[23] on May

24 and 25, 2023, respectively. Without access to the same materials the Preferred had

contemporaneously throughout these cases, Customer-Appellants had *no hope* of competing or

entering such evidence into a trial on a matter such as the Briefed Legal Issue.[24] Additionally, to

the extent that customers were deprived of "professional eyes only" materials, such deprivation

is unconstitutional without court-provided and estate-paid counsel to review such discovery.


Rebecca Gallagher, in her declaration filed only on May 17, writes that "I watched nearly

every AMA since I became an account holder. If I could not watch an AMA live, I would

typically watch it later on the same day that it streamed on YouTube or the next day. I never

watched an AMA more than a day after it streamed live. I relied on the AMAs to inform my

investment decisions in Celsius and to keep me appraised of what was going on at Celsius" and

that "In making my investment decisions, I believed and relied on Mr. Mashinsky's promises that

---

[23] To be clear, Mr. Frishberg and Mr. Herrmann do not have, nor have they ever had, access to all of the materials that the Debtors, UCC and Preferred have/have had access to. They solely have access to all of the materials within the Class Certification Motion.

[24] On information and belief, the Preferred had access to more evidence and discovery than customers had when the Briefed Legal issue was briefed on December 28, 2022, and still do. Customers missed the chance to conduct discovery by not being served the scheduling order. Even if we'd had a chance, we'd have been at a huge disadvantage if the Preferred were able to conduct pre-litigation discovery but customers were not, as the Debtors likely would have simply refused to turn over certain discovery to customers in November and December, as they have done numerous times in these cases. In fact, This Court denied a request for private party discovery under Rule 2004 on November 2, 2023, punting such discovery until after the examiner's report came out, ruling that "considering these ongoing investigations [including the examiner's report], the Court concludes that permitting private party discovery at this time under Rule 2004 would duplicate efforts, wasting estate resources." *See Memorandum Opinion and Order Denying Victor Urbierna de las Heras' Motion For an Order Pursuant to Bankruptcy Rule 2004 Compelling the Production of Documents.*
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911022280000000063.pdf

Yet, litigation such as the Briefed Legal Issue continued, full steam ahead, without general customer discovery permitted and without a meaningful opportunity for customers to conduct any discovery for matters such as the Briefed Legal Issue. The opportunity for customers to conduct discovery via the Briefing Order was lost because it was never served. The deadline to conduct discovery for the Briefed Legal Issue was December 30, 2023, but almost nobody would have seen that, and Movants did not see it. Movants, and approximately 600,000 other creditors, were not served with the Briefing Schedule—and, therefore, participation, or discovery, was an impossibility for us.

Celsius was safer than a bank, and that they would share 80% of their revenue with customers. I believed and relied on statements from Mr. Mashinsky and CNL that Celsius treated its account holders better than traditional banks because it shared most of its income with account holders, while banks were greedy and kept all the profits for themselves. I believed Mr. Mashinsky's statements that Celsius paid the kind of yield that banks should have been paying to customers, but did not. Prior to reading the Examiner's Final Report, I had no knowledge that Celsius did not pass 80% of its revenue back to customers." Thomas DiFiore, in his declaration, states that "**I do remember statements following the migration in which Mr. Mashinsky and others at CNL said there would be _no change and no effect_ on account holders or their funds.**" (Emphasis added.) Movants reserve the right to enter their own declarations when the record is re-opened.

Much of this evidence customers could enter in support of their positions is *still* redacted (including some, which in our opinions should not be redacted).  *See Motion of The Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in each Case Pursuant to Bankruptcy Rule 7023* (Dkt No. 51). Movants have requested this redacted information shortly after it hit the docket. Mr. Frishberg received it on May 24 and Mr. Herrmann on May 25.

## CLOSING ARGUMENT: REQUEST FOR RELIEF

As we have shown in this Motion, the Debtors' failure to serve Celsius customers with the Customer Contract Claims Briefing Schedule—as this Court ordered the Debtors failed to do—was a fatal error that prejudiced the Movants and approximately 600,000 other Celsius customers, violation our constitutional due process requirements and depriving us of our opportunity for notice and a hearing. We respectfully request that this Court indicate pursuant to Federal Rule of Bankruptcy Procedure 8008 that, if granted limited remand by the Distirct Court for the purpose of vacating the order, the Court would vacate the Order, the Briefing Order, and the Opinon as void *ab initio* under Rule 60(b)(4) or, in the alternative, that it raises a substantial question.

We believe this is an "open and shut" case of a void order under 60(b)(4). However, we ask that this pleading be liberally construed, and, to the extent other grounds exist under Rule 60 that they be considered. There is new evidence that was not available when this controversy was litigated but is available now, including our declarations and "professional eyes only" evidence that the Debtors would not share with creditors, including the customer-appellants, until ***very*** recently, which supports the fact that the limited record this Motion was litigated under prejudiced us, and customers. Evidentiary parity with the Preferred still cannot be accomplished (though progress is being made). Mr. Herrmann asked the Debtors for specific documents from the examiner's report earlier this year and such requests went unanswered. Mr. Frishberg also asked the Debtors for documents in late 2022, as well as numerous times in 2023, and all of the requests were either brushed off, or ignored. Rather than delving deep into these issues now, for the sake of judicial economy and saving everyone's time, we ask to amend our pleading or file a new motion under other sections of Federal Rule of Civil Procedure Rule 60(b), if 60(b)(4) is found to be inapplicable here, which would greatly surprise us.

## REQUEST FOR AN EVIDENTIARY RECORD

Our intent with this Motion is to enter into the record evidence that this Court ordered service, and that the service that was ordered did not occur, and to request that ourselves and similarly-situated customers be relieved from the judgment. We respectfully ask that our declarations in support of this Motion be entered into the record and that the Court order a declaration to be filed by the Debtors about service to once and for all put the service question to rest, and for their declaration to be entered into the record. The declaration should state who was served, and whether, as everybody already knows, 99.9% (or so) of Celsius creditors are **known creditors**–meaning that Celsius can reach them.

## REQUEST FOR *PRO SE* RELIEF

As we are *pro se* filers, and neither of us have gone to law school, we do not understand the law as well as a lawyer would. We ask that the Court interpret our filings liberally, and to allow us to correct any mistakes in our pleadings, and to give us a clear opportunity to have our declarations and exhibits entered into the record. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

We are doing our best to protect all of our rights in an extremely complex, multi-billion dollar bankruptcy case, and we hope that in doing so, we protect similarly-situated customers from harm. As the Supreme Court of the United States said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

This Court has the ability to "liberally" construe our requests. We ask that if anything is in the wrong format, or cites the wrong federal code or the wrong subsection of Rule 60, or we make citation mistakes, or our declarations do not perfectly set forth all facts needed to plead our claims, that you allow us to correct any deficiencies.

As the Supreme Court of the United States said in *Haines v. Kerner*, "the district judge should have explain[ed] the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly." 404 U.S. 519, 521 (1972), citing *Henry Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991).

## **RESERVATION OF RIGHTS**

We reserve the right to amend or supplement this Motion; to file a new, separate Motion asserting additional claims based upon other subsections of Federal Rule of Civil Procedure 60(b) or any other legal or equitable grounds to vacate or reopen the record; to move to withdraw the reference; to make similar or identical arguments on appeal; to seek *de novo* review by the District Court; and any and all other rights, including the right to request any other relief related to this Motion.

This filing does not represent a waiver of (i) any of our rights as appellants (ii) our right to ask the District Court a limited remand only for the purposes of vacatur while expressly preserving the rest of the pending appeal in the District Court, should the Court indicate its inclination to grant our request for relief (iii) any right to have any matter or proceeding for which a bankruptcy court lacks the authority to enter a final order or judgment without the consent of the parties adjudicated by an Article III court, (iv) any right to have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, including this Motion or any future related Motion (v) an election of remedies, including the right to continue pursuing the return of our property under Section 541 of the Bankruptcy Code or (vi) any other substantive or procedural rights.

## MOTION PRACTICE

This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, the Movants submit that this Motion satisfies Local Rule 9013-1(a). To the extent we made any errors, we request *pro se* relief and liberal interpretation.

## NOTICE

The Movants will provide notice of this Motion to all parties that have requested notice pursuant to Bankruptcy Rule 2002 and all parties to the pending appeal in the District Court. If further notice must be given (for example because this Motion potentially impacts claims for all account Celsius holders and requires service to 600,000 customers, we respectfully request that the Court order the Debtors to complete such service.)

## NO PRIOR REQUEST

No prior request for the relief sought in this Motion (on an indicative or final basis) has been made to this or any other court.

**WHEREFORE**, the Movants respectfully request that the Court enter the Order granting the relief requested herein on an indicative basis and such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted,

Daniel Frishberg, *Pro Se*
June 14, 2023
/s/*Daniel A. Frishberg*
Santa Clara County, California

Immanuel Herrmann, *Pro Se*
June 14, 2023
/s/*Immanuel Herrmann*
Silver Spring, Maryland

# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.,*[25] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

_____

Pending before this Court is a Motion filed by creditors Immanuel J. Herrmann and Daniel A. Frishberg asking this Court whether, if granted a limited remand, this Court would be vacate the *Opinion* and *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* [Dkt. Nos. 2205 and 2265] and the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* [Dkt No. 1747].

Although there is a pending appeal in the District Court, this Court has the ability to indicate its views on this Motion to the District Court pursuant to Federal Rule of Bankruptcy Procedure 8008. If granted a limited remand by the Distirct Court, it can then vacate final orders that it entered.

The Court finds that the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief should have been served upon nearly 600,000 customers, including the Movants. That

---

[25] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

service never happened. The lack of service raises substantial due process issue and, in this Court's view, the Orders and Opinon must be vacated.

**THE COURT HEREBY STATES AS FOLLOWS:**

The Court would vacate the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use [Dkt. Nos. 2205 and 2265] and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief [Dkt No. 1747] if the District Court remands for that purpose.

**IT IS SO ORDERED**

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A: LETTER TO CELSIUS REGARDING SERVICE (VERIFIED IN DECLARATION)

May 15, 2023

To: Celsius Network, LLC, *et al.*
Cc: Celsius Committee of Unsecured Creditors

We are writing to formally request that the Debtors confirm whether or not the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* (ECF Docket No. 1747) was served upon all "account holders," pursuant to paragraph 9 of the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* (ECF Docket No. 1747), which stated that "upon entry of this Order, the Debtors shall promptly serve this Order upon all parties in interest, which may be via e-mail to account holders" and the Amended Final Order (i) *Establishing Certain Notice, Case Management, and Administrative Procedures and (ii) Granting Related Relief* (ECF Docket No. 1181).

If service was not provided to all "account holders" as required by the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* (ECF Docket No. 1747), paragraph 9, we believe that this can be a way to vacate the order, end this appeal quickly, and roll it into the other ongoing litigation that is taking place–including substantive consolidation, constructive fraudulent transfer, and customer class claims–without the need to file briefs, brief alternative theories, or a large amount of litigation. On the other hand, if it was served, we request that the Debtors conduct an expeditious investigation, and file declarations confirming that it was **fully** served in accordance with D.R. 1747 and 1181, since neither of us were able to locate the records of service of this order on the docket.

Please reply back **as soon as you can**. We will be filing our reply to the preferred tomorrow morning, and we need to hear back by 9:30 AM EST tomorrow (Tuesday, May 16th, 2023) to include your response in our filing. If we do not hear back by tomorrow, we will be requesting at the May 17 hearing that Judge Glenn order you to respond.

If you would have *any* questions or clarifications, or would like to speak by phone, we are available today and tomorrow.

–Immanuel J. Herrmann and Daniel A. Frishberg, *pro se*

# EXHIBIT B: VERIFIED EXHIBIT - EMAILS TO CELSIUS

I, Immanuel J. Herrmann, declare pursuant to 28 U.S.C. § 1746 that the following are true and correct copies of the email exchanges Daniel A. Frishberg and I had with the Debtors, as taken from my email account.

**May 15, 2023 at 1:57pm - From Daniel A. Frishberg to the Debtors:**

Hello All,
Please see our attached letter for our formal request for information.

Best Regards,

Daniel Frishberg

[Attachment: Formal Letter to Celsius, Exhibit A]

**May 15, 2023 at 6:27pm - From Christopher S. Koenig, Counsel to the Debtors, to the Movants:**

I'm not aware of other affidavits of service (or service not noted in the affidavit of service)

Christopher S. Koenig

**May 15, 2023 at 6:51pm - From Gabriela Zamfir Hensley, Counsel to the Debtors, to the to the Movants:**

Daniel,

There is one other affidavit, but it does not change the substantive answer to the question.

Best,

Gabriela Zamfir Hensley

I personally prepared this exhibit and declare under penalty of perjury that its contents are true and correct.

Executed on June 14, 2023 at Silver Spring, MD

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann
*Pro Se*

# EXHIBIT C

Immanuel J. Herrmann, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## IMMANUEL J. HERRMANN'S DECLARATION IN SUPPORT OF THE MOTION TO VACATE THE OPINION AND ORDER REGARDING WHICH DEBTOR ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT CLAIMS UNDER THE TERMS OF USE AND THE ORDER (I) SETTING A BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF

I, Immanuel J. Herrmann, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this declaration in support of the *Motion to Vacate the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief*.

2. I have personal knowledge of the facts stated herein, unless stated on information and belief, and if called upon to testify to those facts I could and would competently do so.

3. All (or substantially all) Celsius creditors are known creditors. I have personally reviewed portions of the Debtors' schedules, as filed on the docket, and can confirm that the company knows the identity of their creditors and that account holders are known to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Celsius. I have also come to know that Celsius creditors are known creditors during my participation in these cases and through being a customer. For example, I know for a fact that Celsius requires customers to submit KYC, or, "know your customer" information that includes email and street address for all its customers, and that Celsius sought to redact such information earlier in these cases, and that the Court ruled on that request for relief.

4.   I am and have been an account holder at Celsius (as defined below) at all times relevant to the above Motion. I am an unaccredited retail investor.

5.   I have contractual disputes with Celsius. I contacted them by phone during the Pause and requested to move my funds to Custody, but they would not do it. In addition, I take the position that the contracts I signed stated that my returned loan collateral was contractually supposed into Custody for my Bitcoin Collateral from my loan closed after April 15, 2022, and that I was the "sole owner" of all of my returned collateral (including the Bitcoin collateral and Ethereum collateral that was deposited into an Earn account before the creation of Custody accounts.)

6.   The Debtors take the position that I am an unsecured Earn creditor bound purely by the terms of use (and thereby this order) and seek to classify me (and similar-situated customers) as such.

7.   I am a United States Citizen and reside in the United States in the state of Maryland.

8.   I have actively been participating in these Chapter 11 Cases as an individual creditor since the beginning. I have been advocating for maximum returns to account holders, and Earn customers in particular, throughout.

9. The above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Celsius") selected me along with two other claimants (Daniel A. Frishberg and Rebecca Gallagher) to serve as bellwether claimants in these Chapter 11 Cases. It is my understanding that the purpose of choosing me to serve as one of the bellwether claimants was for me to represent complex and nuanced contract (and breach of contract) claims against the Debtors and/or Celsius, in part because I had collateral that was contractually required to go into a Custody account or be otherwise held in express or constructive trust under the contracts I signed, but it was instead placed by the Debtors into an Earn account pre-petition, among other claims and causes of action, and in part because I would show up in court and argue my case (versus it being handled by default.)

10. Before the entry of this Order, I filed a timely proof of claim that included contract and non-contract claims against all Celsius debtor entities. Therefore, my claim form is materially impacted by the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**"), including with respect to the Bellwether Claims process.

11. My understanding of the Order is that, in addition to forcing an update to the Debtors' schedules, and a re-opening of the bar date indefinitely, the Order seeks to prevent me from asserting claims under the contracts I signed against any Celsius debtor entities except Celsius Network LLC, and will ultimately require me to re-submit my claim to comply with the order (if it is not reversed or vacated.)

12. At the time of the purported migration from CNL to Celsius Network LLC ("LLC") in the summer of 2021, I had an account with Celsius. I recall reading about the purported

migration sometime close to when it happened and listening to an AMA in which it was
stated that nothing material would change due to the migration.

13. I only learned that Celsius was illiquid on or around the date of The Pause (when they
stopped withdrawals) and (in the instance of Celsius Network LLC "hopelessly")
insolvent sometime after the Petition Date.

14. Had I known that CNL was purportedly transferring all of its obligations but not all of the
assets associated with those obligations to LLC, I would not have continued my
relationships with Celsius. Instead, I would have withdrawn my crypto.

15. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that the
"migration" was in response to a FCA investigation. Had I known that the FCA was
investigating CNL and had accused it of operating an illegal investment scheme, I would
have withdrawn from the Celsius platform.

16. Sometime in either late June or early July of 2021, I read the *Celsius Community Update
– June 23, 2021*, Medium (Jun. 23, 2021), which can be found at:

https://celsiusnetwork.medium.com/celsius-community-update-june-23-2021-a28fca899091

17. The above *Celsius Community Update* assured me that "for the avoidance of doubt, all
Celsius services for all existing customers remain unchanged." I relied on this statement
in continuing to use their services. Had I known that something material had changed
around the time of the migration, such as purportedly only having claims against a
hopelessly insolvent entity, converting my property into unsecured debt, or even the fact
that a material amount of assets were purportedly left with another entity during the
migration that I did not have access to, I would have ended my business relationship with
Celsius and withdrawn my crypto.

18. I did not fully read the Terms of Use Version 8 until "The Pause" (the period before Celsius filed for Chapter 11.) I may have skimmed an earlier version of the Terms of Use when I signed up (though I did not study it closely).

19. I am one of the most active creditors in these cases. I read my emails from Celsius, such as bar date announcements. If I had received service of the Briefing Schedule via email, I would have read it and filed a brief by December 28.

20. I didn't see the Briefing Schedule which states that "Any interested parties shall brief the issue of 'which Debtors are liable to account holders under the global contract (the 'Terms of Use') between Celsius Network LLC and its account holders' (the 'Briefed Legal Issue')" as an express pre-condition of participation until May 10, 2023 – so, while I generally had a sense, sometime in January, that I had "missed my chance" to participate and that it was "too late" to participate, I did not know until May 10, 2023 the full potential consequences of the Briefed Legal Litigation, nor that the Court had required me to be served.

21. Had I filed a brief and thereby participated in the Briefed Legal Issue process, I would have requested discovery. I would have entered both the *Celsius Community Update* and various other statements, including AMA that I relied on in regards to the purported migration. I would have filed a declaration like this one. I also would have briefed the question of whether the purported liability limitation under the Terms of Use, even if it can be read the way Chief Judge Glenn read it, is unenforceable and/or void under New York law, and sought to defer consideration until there was a more developed evidentiary record.

22. The lack of notice and the opportunity to be heard in express violation of Paragraph 9 of the Briefing Schedule prevented me from making these arguments and entering this evidence into the record to my significant prejudice.

23. There are additional arguments that I was unable to make because there was evidence that I could not have gotten via diligence (in part due to being refused discovery) at that time, but also arguments that came to light after the Examiner's report and in the UCC's recent Class Certification Motion. (Dkt. No. 2670.)

24. My understanding at the end of December was that the Court was not allowing "private party" discovery until the examiner's report was completed because of its decision with respect to Victor Urberna de las Heras' 2004 examinations. I believe that, ***even had I participated*** in the Briefed Legal Issue, I would have likely been denied the type of comprehensive discovery that later became available for the UCC to use in the Class Claims process, which is the type of discovery that may have been required to brief the question of whether that the limitation of liability was void under New York law due to unconscionability and thus unenforceable.

25. After conducting an investigation, I can confirm that I was never, to the best of my knowledge, served with the *Debtors' Motion Seeking Entry of an Order (I) Setting A Briefing Schedule and (II) Granting Related Relief* (Dkt. No. 1338), nor the final draft of the Briefing Order.

26. I was not aware that I was required to be served with the Briefing Order until I discovered it May 10, 2023 while I was reviewing items in the UCC's record on appeal.

27. On May 10, 2023, I searched through my emails from Celsius and confirmed that I was not served with the Briefing Scheduling via email as Paragraph 9 of Briefing Schedule

required, and confirmed with Mr. Frishberg that the same occurred with him. I then asked a group of other Celsius creditors if they had been served. None had been.

28. On May 11, 2023, Mr. Frishberg and I first wrote to the Debtors to inquire regarding service via email.

29. On May 15, 2023, I sent a formal letter, along with Mr. Frishberg, to the Debtors requesting this same information (also via email). Mr. Frishberg and I heard back the same day via email, with the 2 following replies:

   a. From Christopher Koenig: "Thanks, Daniel--the affidavits of service speak for themselves, and the Debtors are not aware of any service outside of what is referenced in the affidavits of service."

   b. From Gabriela Zamfir Hensley, "There is one other affidavit [referencing the supplemental affidavit], but it does not change the substantive answer to the question."

30. The copies of the emails from the Debtors, and the letter we sent to them, and have submitted as exhibits with our motion, are true and correct copies and were prepared by me.

31. Had I discovered that the briefing schedule required to be served on all customers including myself before May 10, 2023, I would have investigated earlier and filed under Rule 59 / 9023, or otherwise sought to intervene, in addition to even more expressly raising the issue on appeal. (For the avoidence of doubt, I believe the issue is, nonetheless, well preserved on appeal.)

32. I was unable, through diligence, to read every sentence of the Briefing Schedule before May 10, because more than 2,700 documents (with some of them being 100s of pages

long) have been filed in these cases and it was styled on the docket as an "*Order, Signed on 12/19/2022, (I) Setting A Briefing Schedule and (II) Granting Related Relief.*"

33. I only read the entire Briefing Order, including Paragraph 9, because I already had concerns about whether this *should have* been served on myself and other customers under *Mullane,* but not because I had express knowledge of the Briefing Order itself. I was instead wondering about a *likely* failure to serve us with something as we were preparing to write an appellate brief, and other issues under *Mullane,* such as the fact that no customers participated in the litigation but only the Debtors, the UCC, and the Series B Preferred Holders.

34. Throughout all of my interactions with Celsius, I believed them to be a single entity. When I saw a pop-up about the migration, I believed that the entire Celsius operation (the whole company) was transitioning from a UK operation to a US operation. I also believed the Medium post which stated that nothing had changed.

35. If I knew that I purportedly held my assets with a "hopelessly insolvent" entity, and had I known about Celsius' corporate structure, I would have withdrawn my crypto in the Summer of 2021.

36. I had no way of knowing the corporate structure until after the petition date. The corporate structure was not disclosed to me. On information and belief, it was not disclosed to other customers either.

37. I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 14, 2023 at Silver Spring, MD

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann
*Pro Se*

# CERTIFICATE OF SERVICE

I certify that on Wednesday, June 14, 2023, a true and correct copy of the *Motion to Vacate the Opinion and Order Regarding Which Debtors Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* and *Immanuel J. Herrmann's Declaration in Support of the Motion to Vacate the Opinion and Order Regarding Which Debtors Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* were served upon counsel to the parties to the appeal and the Bankruptcy Court's Core/2002 Service list.

*/s/ Immanuel Herrmann*
Immanuel Herrmann
*Pro Se*
June 14, 2023

## EXHIBIT D

Daniel A. Frishberg, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| _____ | ) |  |
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) |  |

**DANIEL A. FRISHBERG'S DECLARATION IN SUPPORT OF THE MOTION
TO VACATE THE OPINION AND ORDER REGARDING WHICH DEBTOR
ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT CLAIMS UNDER
THE TERMS OF USE AND THE ORDER (I) SETTING A
BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF**

I, Daniel Frishberg, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I submit this declaration in support of the *Motion to Vacate the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief*.

2.  I have personal knowledge of the facts stated herein, unless stated on information and belief, and if called upon to testify to those facts I could and would competently do so.

3.  All (or substantially all) Celsius creditors are known creditors. I have personally reviewed portions of the Debtors' schedules, as filed on the docket, and can confirm that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

the company knows the identity of their creditors and that account holders are known to

Celsius. I have also come to know this during my participation in these cases and through

being a customer. For example, I know for a fact that Celsius requires customers to

submit KYC, or, "know your customer" information that includes email and street

address for its creditors.

4. I am not contractually an account holder at Celsius, as I closed my account with Celsius

before the petition date. The Debtors purportedly did not follow my instructions,

however. They purportedly failed to close my account and they failed to return my crypto

before the petition date. I have so far been treated as, and according to the Debtors

purportedly am, an account holder at Celsius (as defined below), at all times relevant to

the above Motions and the Appeal. I am an unaccredited retail investor.

5. I am a United States Citizen and currently reside in the United States in the state of

California.

6. I have actively been participating in these Chapter 11 Cases as an individual creditor

since the beginning. I have been advocating for maximum returns to account holders, and

Earn customers in particular, throughout.

7. The above-captioned debtors and debtors in possession (collectively, the "Debtors" and,

together with their non-Debtor affiliates, "Celsius") selected me along with two other

claimants (Immanuel J. Herrmann and Rebecca Gallagher) to serve as bellwether

claimants in these Chapter 11 Cases. It is my understanding that the purpose of choosing

me to serve as one of the bellwether claimants was for me to represent complex and

nuanced contract (and breach of contract) claims against the Debtors and/or Celsius, in

part because I closed my account pre petition, which terminated most of my contractual

relationship with Celsius (if it was closed, if it was not closed, the contract was materially breached, and then voided by me), and in part because I would show up in court and argue my case (versus it being handled by default.)

8. Before the entry of this Order, I filed a timely proof of claim that included contract and non-contract claims against all Celsius debtor entities. The Debtors are also seeking to defeat my stated claim and classify me as a general Earn creditor. Therefore, my claim is materially impacted by the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**").

9. My understanding of the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**") is that, in addition to forcing an update to the Debtors' scheduling and a re-opening of the bar date, the Order seeks to prevent me from asserting claims under the contracts I signed against any Celsius debtor entities except Celsius Network LLC, and will ultimately require me to re-submit my claim to comply with the order (if it is not reversed or vacated.)

10. At the time of the purported migration from CNL to Celsius Network LLC ("LLC") in the summer of 2021, I did not have an account with Celsius. I do recall reading about the purported migration sometime in the late summer or early fall of 2021, and listening to some AMA's, in which it was stated that nothing material would change due to the migration.

11. I only learned that Celsius was illiquid on or around the date of The Pause (when they stopped withdrawals) and (in the instance of Celsius Network LLC "hopelessly") insolvent some time after the Petition Date.

12. Had I known that CNL was purportedly transferring all of its obligations but not all of the assets associated with those obligations to LLC, I would not have agreed or signed up for Celsius at all, let alone deposited my assets onto the platform.

13. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that the "migration" was in response to a FCA investigation. Had I known that the FCA was investigating CNL and had accused it of operating an illegal investment scheme, I would have withdrawn from the Celsius platform (or depending on the timing of me finding out, not created an account).

14. Some time in the Late Summer or early Fall of 2021, I read the *Celsius Community Update* – June 23, 2021, Medium (Jun. 23, 2021), which can be found at: https://celsiusnetwork.medium.com/celsius-community-update-june-23-2021-a28fca899091

15. The above *Celsius Community Update* assured me that "for the avoidance of doubt, all Celsius services for all existing customers remain unchanged." I relied on this statement in my decision to use Celsius' services. Had I known that something material had changed, such as purportedly only having claims against a "hopelessly insolvent" entity, or even the fact that a material amount of assets were purportedly left with another entity during the migration that purportedly I did not have access to, I would have never deposited my assets to the Celsius platform or continued using their services.

16. I did not fully read the Terms of Use Version 8 until "The Pause" (the period before Celsius filed for Chapter 11.) I read an earlier version of the Terms of Use when I signed up (though I did not read it closely).

17. I am one of the most active creditors in these cases. If I had received service of the Briefing Schedule, I would have read it and filed a brief by December 28.

18. I didn't expressly see the Briefing Schedule which states that "Any interested parties shall brief the issue of 'which Debtors are liable to account holders under the global contract (the 'Terms of Use') between Celsius Network LLC and its account holders' (the 'Briefed Legal Issue')" as an express pre-condition of participation until May 10, 2023 – so, while I generally had a sense, some time in January, that I had "missed my chance" to participate and that it was "too late" to participate, I did not know until May 10 the full potential consequences of the Briefed Legal Litigation, nor that the Court had required me to be served.

19. Had I filed a brief and thereby participated in the Briefed Legal Issue process, I would have entered both the *Celsius Community Update* and various other statements, including AMA's, that I relied on in regards to the purported migration. I would have filed a declaration. I also would have briefed the question of whether that the purported liability limitation under the Terms of Use, even if it can be read the way Chief Judge Glenn read it, is unenforceable and/or void under New York law, and sought to defer consideration until there was a more full evidentiary record.

20. The lack of notice and the opportunity to be heard in express violation of Paragraph 9 of the Briefing Schedule prevented me from making these arguments and entering this evidence into the record to my significant prejudice.

21. There are additional arguments that I was unable to find via diligence (in part due to being refused discovery) at that time, but also arguments that came to light after the Examiner's report and in the UCC's recent Class Certification Motion. (Dkt. No. 2670.)

22. My understanding at the end of December was that the Court was not allowing "private party" discovery until the examiner's report was completed because of its decision with

respect to Victor Urberna de las Heras' 2004 examinations. I believe that, ***even had I
participated*** in the Briefed Legal Issue, I would have been denied the type of
comprehensive discovery that later became available for the UCC to use in the Class
Claims process, which is the type of discovery that may have been required to avoid that
the limitation of liability was void.

23. After conducting an investigation, I can confirm that I was never, to the best of my
knowledge, served with the *Debtors' Motion Seeking Entry of an Order (I) Setting A
Briefing Schedule and (II) Granting Related Relief* (Dkt. No. 1338), nor the final draft of
the Briefing Schedule, nor the Order that specifically required service, in paragraph 9.

24. I was not aware that I was required to be served with the Briefing Schedule until May 10,
2023. I read it when Mr. Herrmann sent it to me.

25. On May 10, 2023, I investigated my email and confirmed that I was not served with the
Briefing Scheduling via email as Paragraph 9 of Briefing Schedule required, and
confirmed with Mr. Herrmann that the same occurred with him.

26. On May 11, 2023, Mr. Herrmann and I first wrote to the Debtors to inquire regarding
service via email.

27. On May 15, 2023, I sent a formal letter, along with Mr. Herrmann, to the Debtors
requesting this same information (also via e-mail). Mr. Herrmann and I heard back the
same day via email, with the 2 following replies:

    a.   From Christopher Koenig: "Thanks, Daniel--the affidavits of service speak for
           themselves, and the Debtors are not aware of any service outside of what is
           referenced in the affidavits of service."

b. From Gabriela Zamfir Hensley, "There is one other affidavit [referencing the supplemental affidavit], but it does not change the substantive answer to the question."

28. Had I discovered that the briefing schedule required to be served on all customers including myself, before May 10, 2023, I would have investigated earlier and filed under Rule 59 / 9023 or otherwise sought to intervene in the litigation, and I would have even more carefully sought to preserve the issue on appeal (though I believe it is well preserved because of the way our questions on appeal are worded).

29. I was unable, through diligence, to read every sentence of the Briefing Schedule before May 10, because more than 2,800 documents (with some of them being 100s of pages long) have been filed in these cases.

30. I only read the entire Briefing Schedule, including Paragraph 9, because Mr. Herrmann and I already had concerns about whether this *should have* been served on myself and other customers under *Mullane,* but not because I had knowledge of the Briefing Order itself. Mr. Herrmann and I were wondering about a *likely* failure to serve us with something as we were preparing to write an appellate brief, but did not know about the Briefing Order.

31. Throughout all of my interactions with Celsius, I believed them to be a single entity. That is why in my small claims court lawsuit that I filed on July 11th, 2022, I only named Celsius Network LLC: as I assumed that Celsius was one company. If I knew that I purportedly held my assets with a "hopelessly insolvent" entity, and had I known about Celsius' corporate structure, I would have sued all Debtor entities instead. Later, when I learned about Celsius' corporate structure, I filed my Adversary Proceeding against all

Debtor entities. In short, the way I understood it, and the way it was presented to me, Celsius was one company, and operated as such. I had no way of knowing the corporate structure until after the petition date.

32. I declare under penalty of perjury that the foregoing is true and correct.


Executed on: June 14th, 2023, in Santa Clara County, California
*/s/Daniel A. Frishberg*
Daniel Frishberg
*Pro Se*

## CERTIFICATE OF SERVICE

I certify that on Wednesday, June 14, 2023, a true and correct copy *Daniel A. Frishberg's*

*Declaration in Support of the Motion to Vacate the Opinion and Order Regarding Which Debtors*

*Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i)*

*Setting a Briefing Schedule and (ii) Granting Related Relief* were served upon counsel to the

parties to the appeal Bankruptcy Court's Core/2002 Service list.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
June 14, 2023